IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**FILED**

IN RE:                                                    MISCELLANEOUS ACTION

DEC – 4 2008

FRANK J. MARCONE        MICHAEL E. KUNZ; Clerk    NO. 08-164
                        By_____Dep. Clerk

REPORT AND RECOMMENDATION

Padova, Kauffman, Sanchez JJ.                      December 4, 2008

        Before the Panel is Petitioner Frank J. Marcone's Answer to the Order to Show Cause

why he should not be subject to discipline by this Court for the unauthorized practice of law as

set forth in the June 30, 2008 Memorandum Opinion of Magistrate Judge David R. Strawbridge

in Schutter v. Herskowitz, Civ. A. No. 07-3823. On November 21, 2008, the undersigned panel

held a hearing to consider whether the imposition of discipline would be appropriate in this case.

I.      BACKGROUND

        A.      Mr. Marcone's Disciplinary History

        Mr. Marcone was born in 1936 and admitted to the bar of the Supreme Court of

Pennsylvania in 1963. He has been the subject of many disciplinary proceedings before this

Court, the Supreme Court of Pennsylvania, and the United States Court of Appeals for the Third

Circuit. Without going into unnecessary detail, Mr. Marcone's disciplinary history may be

summarized as follows. Between October 1977 and November 1985, Mr. Marcone received two

private reprimands and four informal admonitions from the Supreme Court of Pennsylvania.

Office of Disciplinary Counsel v. Marcone, 16 DB 1988, R & R at 31-33 (Disc. Bd. June 16,

1989). He was first suspended by the Pennsylvania Supreme Court on October 11, 1989, in

connection with his failure to return a $2000 bail fund he obtained in the course of his

representation of a client in a criminal matter. <u>Office of Disciplinary Counsel v. Marcone</u>, 855

A.2d 654, 657 and n.2 (Pa. 2004). The Pennsylvania Supreme Court vacated the suspension

order on July 19, 1990 for additional testimony and findings of fact. <u>Id.</u> On July 6, 1995, the

Pennsylvania Supreme Court reinstated the four year suspension, with credit for the period of

suspension previously served. <u>Id.</u>; <u>see also</u> <u>Office of Disciplinary Counsel v. Anonymous, 16 DB</u>

<u>1988</u>, 690 Disciplinary Docket No. 2 (Pa. July 6, 1995).

This Court first imposed reciprocal discipline on October 11, 1989, suspending Mr.

Marcone for four years. <u>In the Matter of Frank J. Marcone</u>, Misc. No. 89-624, Order (E.D. Pa.

Oct. 11, 1989). On August 16, 1990, after the Supreme Court of Pennsylvania vacated its first

order of suspension on July 19, 1990, this Court vacated the October 11, 1989 suspension order,

reinstating Mr. Marcone as an active and qualified member of the bar of this Court. <u>In the Matter</u>

<u>of Frank J. Marcone</u>, Misc. No. 89-624, Order (E.D. Pa. Aug. 16, 1990). On February 14, 1996,

after the Pennsylvania Supreme Court reinstated its four year suspension of Mr. Marcone, giving

credit for the suspension already served, this Court imposed reciprocal discipline, suspending Mr.

Marcone until his four year suspension by the Supreme Court of Pennsylvania expired. <u>In the</u>

<u>Matter of Frank J. Marcone</u>, Misc. No. 95-71, Order (E.D. Pa. Feb. 14, 1996). Mr. Marcone was

reinstated to practice before this Court on September 28, 1998, while he was still under

suspension by the Pennsylvania Supreme Court.[1] He had not applied for reinstatement to the

Supreme Court of Pennsylvania before moving for reinstatement to this Court.

On October 15, 1999, Mr. Marcone was convicted of three counts of failure to file tax

---

[1] At the time he was reinstated by this Court on September 28, 1998, Mr. Marcone had been
suspended from the practice of law for a total of four years.

returns in violation of 26 U.S.C. § 7203, and sentenced to four months of imprisonment, one year of supervised release, and a special assessment of $75.00. United States v. Marcone, Crim. No. 98-544, Judgment and Conviction Order (E.D. Pa. Oct. 15, 1999). On November 9, 1999, Mr. Marcone was immediately suspended from the practice of law before this Court pursuant to Local Rule 83.6 (Rule I), pending a hearing to be held on his request to set aside the suspension. In the Matter of Frank J. Marcone, Misc. No. 99-168, Order (E.D. Pa. Nov. 9, 1999). The hearing was held on December 21, 1999, and Mr. Marcone's request that the suspension be set aside was denied on January 4, 2000. The United States Court of Appeals for the Third Circuit suspended Mr. Marcone for a period of four years in connection with his tax conviction on November 26, 1999. In the Matter of Frank J. Marcone, C.A. Misc. Record No. 89-8079, Order (3d Cir. Nov. 26, 1999). The Supreme Court of Pennsylvania suspended Mr. Marcone for five years in connection with this tax conviction on September 10, 2004.[2]

Mr. Marcone was reinstated to the practice of law before this Court on July 16, 2001, but remains suspended by the Pennsylvania Supreme Court. See In the Matter of Frank J. Marcone, Misc. No. 99-168, Order (E.D. Pa. July 16, 2001). He has indicated to this Court that he will be eligible to apply for reinstatement to the Pennsylvania Supreme Court in approximately 11 months and that he intends to apply for reinstatement.

B.    The Relevant Conduct

Based upon the record before us, we believe that Magistrate Judge Strawbridge cogently

---

[2]In a separate matter, on August 16, 2004, the Pennsylvania Supreme Court adjudicated Mr. Marcone to be in contempt of its July 6, 1995 order of suspension because he opened a law office in Pennsylvania from which he engaged in the practice of law before this Court. Office of Disciplinary Counsel v. Marcone, 855 A.2d at 668.

summarized the conduct that triggered the instant proceeding in a June 2008 opinion in <u>Schutter</u>.
See <u>Schutter v. Herskowitz</u>, Civ. A. No. 07-3823, 2008 U.S. Dist. LEXIS 49959 (E.D. Pa. June
30, 2008). During the first three months of 2006, when Mr. Marcone was admitted to practice
only before this Court, he performed legal services for Phillip Banks, a real estate broker, in
connection with a transaction involving real estate located in Philadelphia, Pennsylvania. <u>Id.</u> at
*4, *15-19; <u>see also</u> <u>In re Frank Marcone, Esq.</u>, Misc. No. 08-164, Transcript at 3-4 (E.D. Pa.
Nov. 21, 2008) ("11/21/08 Tr."). Banks had been hired by Stephan Schutter, who sought to
purchase a building from David Herskowitz. <u>Schutter</u>, 2008 U.S. Dist. LEXIS 49959, at *5; <u>see</u>
<u>also</u> 11/21/08 Tr. at 4. After the transaction fell through, and Schutter and Herskowitz agreed
upon a Termination Agreement, Schutter contacted Banks, seeking the return of his $100,000
initial deposit for the property, which Banks held in escrow. <u>Schutter</u>, 2008 U.S. Dist. LEXIS
49959, at *6-7; <u>see also</u> 11/21/08 Tr. at 5, 7.

The Termination Agreement between Schutter and Herskowitz provided that "all escrow
monies held by Philip Banks shall be released immediately to the Buyer [Schutter]." <u>Schutter</u>,
2008 U.S. Dist. LEXIS 49959, at *7 (internal quotation omitted). Banks, however, refused to
release the escrow funds. Instead, he retained Mr. Marcone to prepare "a different release
document purporting to memorialize the parties' intention with respect to cancelling the
Agreement and releasing the escrow funds with permission granted to Banks to retain $12,000
of the funds for his services and to remit $600 to Attorney Frank J. Marcone for his legal
services." <u>Id.</u>; <u>see also</u> 11/21/08 Tr. at 6. Banks claimed that Schutter asked him to prepare the
release, but Schutter denied doing so. <u>Schutter</u>, 2008 U.S. Dist. LEXIS 49959, at *7; <u>see also</u>
11/21/08 Tr. at 8 (reporting that Schutter asked Banks to retain counsel to prepare the release).

4

Schutter did not agree to allow Banks to retain any portion of the escrow funds and Banks, in turn, refused to return the funds. Schutter, 2008 U.S. Dist. LEXIS 49959, at *7. In October 2006, Schutter filed a lawsuit against Herskowitz and Banks in the United States District Court for the District of Columbia. Id. at *19. That lawsuit was transferred to this Court in September 2007. Id.

According to the record before Magistrate Judge Strawbridge, Mr. Marcone performed the following legal services for Banks between January and March 2006: "preparation of a release from obligations under the Agreement and the preparation of a release of agency obligations and distribution of escrow funds[,]" interview of Banks, "preparation and review of Agreement[,]" and consultation with Banks. Id. at *16-17. Mr. Marcone also spoke with, and sent a letter to, Schutter's attorney, a Mr. Gallagher. Id. at *18. When asked about these legal services during our November 21, 2008 Hearing, Mr. Marcone stated that Banks initially approached him to ask whether there would be any problem in preparing binding releases between parties who were citizens of different states. 11/21/08 Tr. at 5. Mr. Marcone claimed to have consulted with attorneys Samuel Stretton and Seth Rosner prior to accepting this representation, and he assured us that both attorneys told him that he could perform the requested legal services within the limitations of his admission to this Court.[3] Id. at 16, 18, 32-34.

Mr. Marcone researched Banks' question, learned that the fact that the parties were from different states made no difference to the releases, and prepared the releases. Id. at 6-7, 9. He

---

[3] We asked Mr. Marcone to provide this Court with affidavits from Mr. Stretton and Mr. Rosner describing their consultations with Mr. Marcone with respect to his preparation of the releases. Mr. Marcone informed us, by letter dated December 2, 2008, that he must have been mistaken regarding his consultation with Mr. Rosner, because Mr. Rosner does not recall discussing this issue with him.

charged Banks $600 for preparing the releases and giving legal advice. Id. at 20. After the releases were prepared, they were sent to Herskowitz, who signed them, and to Schutter, who did not. Id. at 9, 12. Mr. Marcone reports that Schutter's attorney, Gallagher, had taken the position that Banks had no right to compensation from Schutter. Id. at 13. Mr. Marcone spoke to Gallagher three or four times and exchanged letters, negotiating Banks' claim for compensation from Schutter. Id. at 12-15. Mr. Marcone also provided advice to Banks regarding the legitimacy of his claim for compensation from Schutter and the tactics he should use in seeking compensation from Schutter. Id. at 14, 31.

During the Hearing, Mr. Marcone informed the panel that he had seen the dark clouds of litigation forming during his involvement with Banks, Schutter and Gallagher, though the point at which these clouds first appeared varied. In Mr. Marcone's first verison of events, early in the Hearing, he stated that there was no pending litigation and no dispute that was ready to go to court at the time he prepared the releases. (Id. at 15, 21.) However, he reported that those dark clouds appeared sometime thereafter, when he began to negotiate with Gallagher over Banks' compensation. (Id. at 15.) According to Mr. Marcone, after he prepared the release, he had no further involvement in the matter until Gallagher contacted Banks regarding Banks' claim for compensation from Schutter. Id. at 12-13. At that point, Banks asked Mr. Marcone to become involved. Id. at 12. Mr. Marcone and Mr. Gallagher exchanged their positions over three or four telephone calls and a few letters. Id. at 13. According to Mr. Marcone, Gallagher claimed, in his last conversation with Mr. Marcone and his last letter to Mr. Marcone, that he was looking for local counsel in Philadelphia to file a suit in federal court. Id. at 15. Loots, another attorney for Schutter, eventually filed the lawsuit naming Herskowitz and Banks as defendants in the United

States District Court for the District of Columbia, approximately seven months after Marcone's involvement with the releases concluded. Id.

Before the Schutter action was transferred to this Court, Mr. Marcone represented Banks in that action. Id. at 35-36. Mr. Marcone told the panel during the Hearing that he prepared a motion on behalf of Banks for filing in the United States District Court for the District of Columbia, even though he is not admitted to practice there and had not moved for admission *pro hac vice.* Id. at 36. Mr. Marcone acknowledged that, when the D.C. District Court refused to accept the motion because he was not admitted to practice there, he gave the motion to Banks and advised Banks to file the motion *pro se,* as if Banks had, himself, prepared it. Id. at 36-37, 39. Mr. Marcone explained that he did not initially apply for *pro hac vice* admission before the D.C. District Court because he is "a federal practitioner . . . in other words, if I'm admitted to the Federal courts, most Federal courts will say, okay, you're admitted, you can come in." Id. at 37-38.

Mr. Marcone has, in effect, been treating his limited admission to practice before this Court as a broad "federal license" to appear before any federal court and informed the panel that he has also appeared before the United States District Courts for the Northern District of New York and the District of New Jersey without first seeking admission pursuant to those Courts' local rules. Id. at 38. It is beyond cavil that our admission of Mr. Marcone to practice here, in accordance with our local rules, cannot preempt other federal courts from enforcing their own local rules with respect to attorney admissions, including the requirement that out-of-district attorneys seek admission *pro hac vice.* While we have not been asked to determine whether this conduct constitutes the unauthorized practice of law, we find it highly disturbing that Mr.

7

Marcone has used his limited admission to practice before this Court as a broad license to practice in other federal courts to which he has not been admitted.

About a third of the way through the Hearing, Mr. Marcone's recollection seemed to change, and he shared his second version of events. In this version, he reported that he had seen "problems coming" when Banks first asked him to prepare the releases. Id. at 22-23, 25. Mr. Marcone explained that when Banks first came to him, Banks stated that Schutter wouldn't pay him, and asked Mr. Marcone to prepare releases so that he might get paid. Id. at 22. In this second version of events, Gallagher had threatened to file suit in federal court from the inception of Mr. Marcone's involvement in the matter. Id. at 27. Mr. Marcone also represented in this second version that Banks had discussed his compensation with Gallagher before he approached Mr. Marcone to prepare the releases, and, consequently, Mr. Marcone had known that the case would end up in federal court even before he began his involvement with the releases. Id. at 31-32.

Mr. Marcone subsequently changed stories dramatically, asserting, in a third version of events, that his true client in this matter had been Schutter, because Schutter had asked Banks to obtain counsel to prepare the releases, and that his loyalties were therefore owed to Schutter. Id. at 47-48. In this third version, Mr. Marcone represented that he was aware, from the beginning of his involvement in this matter, that the agreement between Schutter and Herkowitz was breaking down. Id. at 54-56. He also stated that he was drafting the releases to prevent threatened federal court litigation, and that he could see, at the time of drafting, that the situation would explode and result in litigation. Id. at 51-53, 56.

We find that Mr. Marcone's descriptions of his involvement in the real estate transaction

8

are confusing, unreliable, and unpersuasive. His descriptions of his legal work with respect to the releases, the legal advice he provided to Banks, his subsequent communications with Gallagher, and the reasons why he performed this work are inconsistent with one another as well as the facts found by Magistrate Judge Strawbridge. Mr. Marcone's descriptions of how he came to be retained to prepare the release cannot be reconciled with Schutter's specific denial that he asked Banks to prepare a release. Schutter, 2008 U.S. Dist. LEXIS 49959, at *7. Moreover, Mr. Marcone's statement late in the Hearing, that his client for legal services was Schutter, cannot be reconciled with his statement earlier that his client was Banks, and that he had given legal advice to Banks regarding his relationship with Schutter and his legal entitlement to compensation for his work for Schutter. Moreover, if Schutter were indeed Mr. Marcone's client, to whom he owed a duty of loyalty, Mr. Marcone's provision of legal advice to Banks regarding Banks' relationship with Schutter, negotiations with Schutter's attorney regarding Banks' entitlement to compensation from Schutter, and representation of Banks in Schutter's lawsuit against him, would create clear conflicts of interest. Mr. Marcone was also patently inconsistent in his representations as to when he knew that litigation was imminent between Schutter and Banks, stating, on the one hand, that there was no dispute that was ready to go to court at the time he was retained by Banks to prepare the releases; then stating that he could see the dark clouds of litigation on the horizon when he prepared the releases; and, finally, telling us that litigation had already been threatened, and was imminent, at the time he prepared the releases.

We find as fact that none of the legal services performed by Mr. Marcone in connection with the releases had any connection to any lawsuit that was then pending in this Court or was being considered for imminent filing in this Court by Mr. Marcone on behalf of Banks or

9

Schutter. Indeed, there is no evidence on the record before us that Mr. Marcone was ever asked

to prepare and/or file a lawsuit in connection with the releases or that Banks ever considered

filing a lawsuit in connection with either the releases or his claim of entitlement to compensation

from Schutter. The lawsuit that was eventually filed by Schutter for return of the escrow was

filed approximately seven months later in the United States District Court for the District of

Columbia by another attorney. It was not transferred to this Court until eighteen months after

Mr. Marcone had completed the releases in question. Mr. Marcone did represent Banks in

connection with the lawsuit. However, Banks was a defendant, and he did not initiate the suit.

II.     RELEVANT STANDARDS FOR PROFESSIONAL CONDUCT

There is no question that we have the power "to control admission to [our] bar and to

discipline attorneys who appear before [this Court]." Chambers v. NASCO, Inc., 501 U.S. 32,

43 (1991) (citing Ex parte Burr, 22 U.S. 529, 531 (1824)). Rule IV(A) of this Court's Local Rule

83.6 provides that "[f]or misconduct defined in these Rules, and for good cause shown, and after

notice and opportunity to be heard, any attorney admitted to practice before this court may be

disbarred, suspended from practice before this court, reprimanded or subjected to such other

disciplinary action as the circumstances may warrant." Rule IV(B) defines misconduct to include

actions that violate the Rules of Professional Conduct adopted by the Supreme Court of

Pennsylvania. The following Rules of Professional Conduct are relevant to our consideration of

this matter:

1.     RPC 5.5(a): "A lawyer shall not practice law in a jurisdiction in violation of the

regulation of the legal profession in that jurisdiction . . . ."

2.     RPC 8.4: "It is professional misconduct for a lawyer to: (a) violate or attempt to

violate the Rules of Professional Conduct . . . ; [or] (d) engage in conduct that is

prejudicial to the administration of justice."

III.     DISCUSSION

Mr. Marcone was, during the relevant time period, permitted to practice law <u>only</u> before

this Court.[4]  This limited admission to practice only entitled Mr. Marcone to appear in this Court

on behalf of clients and perform tasks incident to the preparation and prosecution of his clients'

claims or defenses in matters pending before or to be presented to this Court.  See <u>Sperry v.</u>

<u>Florida</u>, 373 U.S. 379, 404 (1963); <u>Surrick v. Killion</u>, 449 F.3d 520, 533-34 (3d Cir. 2006); <u>cf.</u>

<u>Kennedy v. The Bar Association of Montgomery County, Inc.</u>, 561 A.2d 200, 208 (Md. 1989).[5]

Mr. Marcone has taken the position that his services for Banks were not prohibited

because they fall within the context of his "federal license." (11/21/08 Tr. at 16-18, 49.)  He

contends that these services were not unauthorized, even though they did not require his

appearance before this Court, because they involved parties who are diverse in citizenship.[6]  (<u>Id.</u>

---

[4]As Mr. Marcone was under an order of suspension of the Pennsylvania Supreme Court, he was required to comply with the requirements of Pennsylvania Rule of Disciplinary Enforcement 217, which apply to formerly admitted attorneys.  Consequently, he was prohibited from engaging in any law-related activities in Pennsylvania, including "rendering legal consultation or advice to a client." Pa. R.D.E. 217(j) and 217(j)(4)(vi).

[5]In <u>Kennedy</u>, the Court of Appeals of Maryland found that Thomas Kennedy, who was admitted to practice before the United States District Court for the District of Maryland, but not licensed to practice law in Maryland, and who practiced from an office in Maryland, engaged in the unauthorized practice of law by representing Maryland clients before the Maryland state courts on state law matters.  <u>Kennedy</u>, 561 A.2d at 208-09.  The Court of Appeals enjoined Kennedy from the practice of law in Maryland, with the exception of tasks "incident to the preparation and prosecution of specific clients' claims or defenses in matters pending before or to be presented to the United States District Court for the District of Maryland." <u>Id.</u> at 208.

[6]Mr. Marcone claims that the real estate transaction between Schutter and Herskowitz falls within this Court's diversity jurisdiction because Schutter lived in Washington, D.C. and Herskowitz

at 16-17, 49.) Mr. Marcone relies on three cases: Theard v. U.S., 354 U.S. 278 (1957); Sperry, 373 U.S. 379; and Surrick, 449 F.3d 520, and contends that these three cases all permit an attorney who is admitted to practice before a federal court to engage in a broad range of activities, as long as those activities may be tangentially related to conduct that might someday be the subject of a federal court lawsuit in any district. (11/21/08 Tr. at 17-18, 24, 27-30, 34-35.) We disagree.

Although the cases upon which Mr. Marcone relies underlie our authority to control the admission to practice before this Court independent of the disciplinary power of the Pennsylvania Supreme Court, they provide no support for Mr. Marcone's position that he may engage in any legal activities that might some day be the subject of a federal lawsuit. In Theard, the Supreme Court determined that state disbarment "is not conclusively binding on the federal courts," and explained that "disbarment by federal courts does not automatically flow from disbarment by state courts." Theard, 354 U.S. at 282. In Sperry, the Supreme Court found that Florida's attempt to prevent a registered patent agent (who was not a lawyer) from practicing in Florida violated the Supremacy Clause:

> A State may not enforce licensing requirements which, though valid in the absence of federal regulation, give "the State's licensing board a virtual power of review over the federal determination" that a person or agency is qualified and entitled to perform certain functions, or which impose upon the performance of activity sanctioned by federal license additional conditions not contemplated by Congress. "No State law can hinder or obstruct the free use of a license granted under an act of Congress."

Sperry, 373 U.S. at 385 (quoting Pennsylvania v. Wheeling & Belmont Bridge Co., 54 U.S. (13

---

in Vermont, and because the amount in controversy exceeded $75,000 (the purchase price of the property was $1,600,000 and the escrow fund amounted to $100,000).

How.) 518, 566 (1851)).  Applying these legal principles, the Supreme Court vacated Florida's order enjoining Sperry from rendering legal opinions as to patentability, preparing legal documents, holding himself out as someone qualified to prepare patent applications and amendments, preparing and prosecuting patent applications, and otherwise engaging in the practice of law, because that order improperly prohibited "him from performing tasks which are incident to the preparation and prosecution of patent applications before the Patent Office."  Id. at 404.  In Surrick, the Third Circuit determined that this Court's power "to determine who may practice law before it preempts Pennsylvania law barring an [attorney who was admitted to practice before this Court but suspended from practice by the Supreme Court of Pennsylvania] from maintaining a law office."  Surrick, 449 F.3d at 533-34.  The Third Circuit, in reaching this conclusion, agreed with the district court that "maintaining a law office is 'reasonably within the scope of the practice authorized' by 28 U.S.C. §§ 1654 & 2071 and the local rules and that the state's regulation of such conduct hinders [that attorney's] federal license to practice law."  Id. at 533.

There is no dispute that Mr. Marcone's admission to practice before this Court authorizes him to "perform[] tasks which are incident to the preparation and prosecution" of cases before this Court and to perform those tasks in an office.  See Sperry, 373 U.S. at 404; Surrick, 449 F.3d at 533-34.  However, the right to perform tasks which are incident to the preparation and prosecution of cases before this Court should not be confused with the right to practice law generally.[7]

---

[7]The Pennsylvania Supreme Court has explained that the right to practice law in this Commonwealth includes the following:
> (1) the instruction and advising of clients in regard to the law so that

13

"The right to practice in a court is limited to providing legal services that are incidental to a specific case or proceeding pending in that court." In re Peterson, 163 B.R. 665, 673 (Bankr. D. Conn. 1994) (finding that an attorney admitted to practice in the United States District Court for the District of Connecticut, but not licensed to practice law in Connecticut, had engaged in the unauthorized practice of law by representing bankruptcy clients in connection with a Connecticut state foreclosure matter, and other state court issues). Consequently, "admission by a federal court is not a general license to advise on matters of federal law, absent a real bearing on actual or potential litigation in federal court. Even if a problem has a litigation aspect on which the lawyer may properly advise, federal admission confers no right to advise on purely transactional aspects of the same problem or on the relative merit of different state court litigation options." William T. Barker, Extrajurisdictional Practice by Lawyers, 56 Bus. Law. 1501, 1545 (2001). Moreover, an attorney whose practice is limited to a federal court, and who is not admitted to practice in the state in which that court sits, may not engage in client triage, i.e., such an attorney cannot advise a potential client whether his or her matter should be brought in federal or state court. See Attorney Grievance Commission of Maryland v. Harris-Smith, 737 A.2d 567 (Md. 1999) (holding that an attorney admitted to practice before the United States District Court for the District of Maryland, but not licensed to practice in Maryland, engaged in

---

they may pursue their affairs and be informed as to their rights and obligations; (2) the preparation of documents for clients requiring familiarity with legal principles beyond the ken of ordinary laypersons; and (3) the appearance on behalf of clients before public tribunals in order that the attorney may assist the deciding official in the proper interpretation and enforcement of the law.

Office of Disciplinary Counsel v. Marcone, 855 A.2d at 660 (citing Shortz v. Farrell, 193 A. 20, 21 (Pa. 1937)).

14

the unauthorized practice of law by meeting with new clients in her firm's Maryland office, and engaging in triage to determine whether she could represent those in federal court or whether she would have to refer them to one of her partners, who was licensed to practice in Maryland). There are two reasons why an attorney whose practice is so limited cannot engage in client triage: (1) there is a danger that, in reviewing the facts and determining the best course of action for the client, the attorney "would be motivated to cant advice artificially in the safe direction[;]" and (2) there is also a danger that the unadmitted attorney will use the "operation of the triage . . . as a shield behind which to conduct an unlimited-in-fact law practice." Id. at 573 (internal quotations omitted)

In summary, admission to practice before this Court entitles the admitted attorney to appear in this Court on behalf of his or her clients. It also entitles the admitted attorney to perform tasks that "are incident to the preparation and prosecution of specific clients' claims or defenses in matters pending before or to be presented to" this Court. Kennedy, 561 A.2d at 208. In addition, an attorney who is admitted to practice before this Court may maintain a law office in connection with that practice. Surrick, 449 F.3d at 533-34. Admission to practice before this Court does not, however, entitle the admitted attorney to generally instruct and advise clients regarding the law, perform client triage, or prepare documents for clients that have no connection with matters pending before, or to be presented to, this Court. See Marcone, 855 A.2d at 660.

The conduct that is at the core of this matter is the preparation of releases for a real estate broker in connection with a real estate transaction that was not, at that time, the subject of a case

15

pending, or to be filed, in this Court.[8]  Consequently, we conclude that Mr. Marcone's admission

to practice before this Court clearly did not authorize this conduct.  We further conclude that Mr.

Marcone's preparation of the releases constituted the general practice of law in Pennsylvania, for

which he is not authorized, since he has been, at all relevant times, suspended from the practice

of law by the Supreme Court of Pennsylvania.  Accordingly, Mr. Marcone has engaged in the

unauthorized practice of law in violation of Rules of Professional Conduct 5.5(a), 8.4(a) and

8.4(d).[9]

IV.     RECOMMENDED DISCIPLINE

        We must also determine the extent of the sanction to be imposed on Mr. Marcone.  Our

rules provide that, "[f]or misconduct defined in these Rules . . . any attorney admitted to practice

before this court may be disbarred, suspended from practice before this court, reprimanded or

subjected to such other disciplinary action as the circumstances may warrant."  Local Rule

83.6(Rule IV(A)).  "Disciplinary sanctions . . . are not primarily designed for their punitive

effects.  Instead, disciplinary sanctions are intended to protect the public from unfit attorneys and

maintain the integrity of the legal system."  Office of Disciplinary Counsel v. Christie, 639 A.2d

782, 785 (Pa. 1994) (citations omitted).  In weighing the disciplinary sanctions to be imposed, we

_____

        [8]Even if Mr. Marcone had, indeed, seen the storm clouds of litigation forming on the horizon
at the time he prepared the releases in question, he had not been asked to file said lawsuit and there
was no certainty that said lawsuit would be filed in the United States District Court for the Eastern
District of Pennsylvania, rather than in the Court of Common Pleas for the County of Philadelphia
(where the property was located) or in a court in the District of Columbia or the state of Vermont
(where the principal parties to the real estate transaction lived).

        [9]The fact that this matter ultimately reached this Court has no bearing on our decision.  The
work that Mr. Marcone performed for Banks from January through March 2006 was purely
transactional in nature and had no bearing on any case then before this Court or being readied for
filing before this Court.

consider the nature and gravity of the misconduct in this case and any aggravating and mitigating factors.

We find the nature of Mr. Marcone's misconduct in this case to be severe.  He has wrongfully treated his limited admission to the practice of law before this Court as a broad license to generally practice law in Pennsylvania so long as he saw some federal connection, no matter how attenuated.  This practice resulted in an evasion of the restrictions placed on him by the Supreme Court of Pennsylvania.  He has also treated his limited admission to the practice of law before this court as a license for practicing before federal courts in other districts without special or *pro hac vice* admission.

We also find that there are several aggravating circumstances.  Mr. Marcone has a long and extensive disciplinary history.  As mentioned above, he has received two suspensions, four informal admonitions, two private reprimands, and a public censure from the Supreme Court of Pennsylvania.  He has been suspended from the practice of law before this Court twice, and is presently under an order of suspension from the Third Circuit.  In addition, Mr. Marcone has been convicted of three counts of violation of 26 U.S.C. § 7203.  Moreover, Mr. Marcone's conduct in this case included the unauthorized practice of law in the United States District Court for the District of Columbia.  Furthermore, Mr. Marcone has admitted to us that he gave advice to Banks regarding the legal validity of Banks' claim for compensation from Schutter, negotiated with Schutter's attorney on Banks' behalf regarding that claim for compensation, and represented Banks in a lawsuit in connection with that claim for compensation, even though he claims that Schutter was his client in connection with the release and that he owed a duty of loyalty to Schutter.  We are not satisfied that Mr. Marcone gave any significance to his obligation of loyalty

to a client, or to his duty to avoid conflicts of interest under Rules of Professional Conduct 1.7 and 1.9, which govern the duties owed to current and former clients.

Mr. Marcone has asserted as mitigating factors only that he consulted Mr. Stretton and Mr. Rosner before accepting his engagement to prepare the releases and that he believed that he was authorized to accept this engagement by the opinion of the Third Circuit in Surrick, 449 F.3d 520, and the opinions of the Supreme Court in Theard, 354 U.S. 278, and Sperry, 373 U.S. 379. We have asked Mr. Marcone to provide the Court with affidavits from Mr. Stretton and Mr. Rosner detailing these consultations. Mr. Marcone was, however, unable to obtain an affidavit from Mr. Rosner and now avers that he was mistaken when he claimed to have consulted with Mr. Rosner before accepting the engagement to prepare the releases. Moreover, as discussed above, we do not believe that Surrick, Theard, and Sperry provide any support for Mr. Marcone's position and, therefore, we find his reliance on this authority to be misguided.

Our review of sanctions imposed in similar cases indicates that discipline may take the form of a suspension for as little as six months, to disbarment, depending on the circumstances of the case and the aggravating circumstances. Office of Disciplinary Counsel v. Papas, 78 Pa. D. & C.4th 89 (2005) ("Sanctions imposed by the Supreme Court for practicing while on inactive status have ranged from a six-month suspension to the unusually severe sanction of disbarment." (citing In re Anonymous No. 123 D.B. 1996, 41 Pa. D. & C.4th 290 (1998); In re Anonymous Nos. 78 D.B. 1984 and 38 D.B. 1985, 39 Pa. D. & C.3d 131 (1986))). The lightest sanctions have been imposed on attorneys whose unauthorized practice is limited and who have no previous disciplinary history. See, e.g., In re Anonymous, No. 123 D.B. 96, 41 Pa. D. & C.4th 290, 301-02 (1998) (suspending attorney for only six months for continuing to practice law in

18

one case while on inactive status because his unauthorized practice was limited in scope, there was no secondary dishonesty, and he had no prior disciplinary record). However, "the defiant unauthorized practice of law can lead to severe discipline." Id. at 301.

Attorneys whose unauthorized practice included dishonesty, or other violations of the Rules of Professional Conduct, or who had prior disciplinary records, receive more severe sanctions. In Office of Disciplinary Counsel v. Jackson, 637 A.2d 615 (Pa. 1994), the Pennsylvania Supreme Court disbarred an attorney who engaged in the unauthorized practice of law after having been suspended for a period of five years. Id. at 619. The Pennsylvania Supreme court found that disbarment was appropriate in that case because, although he had been given "literature to advise him of what he was permitted to do while under suspension . . . Jackson undertook a deliberate course of conduct in violation of our order which involved deceit and dishonesty." Id. The conduct in question in that case involved assisting a client in fabricating his testimony for a hearing. Id.

In In re Anonymous No. 135 D.B. 94 and 38 D.B. 95, 33 Pa. D. & C.4th 481 (1996), the Pennsylvania Supreme Court disbarred an attorney who engaged in the unauthorized practice of law and had an extensive record of prior discipline. This attorney engaged in the unauthorized practice of law after being suspended for six months and, while he was representing a client during his suspension, "failed to inform his client of a hearing, and [when] he appeared at the hearing . . . misrepresented to the court that his client was unavailable." Id. at 491-92. The Pennsylvania Supreme Court has also suspended an attorney for four years for the unauthorized practice of law after that attorney failed to withdraw from his representation of an estate after he was suspended for three years for conversion of trust funds. In re Anonymous No. 48 D.B. 97,

19

42 Pa. D & C.4th 254, 271-72, 276 (1998).  In Office of Disciplinary Counsel v. Herman, 426 A.2d 101 (1981), Pennsylvania Supreme Court disbarred Herman for continuing to practice, and accepting new clients, for months after he was suspended for three years.  Id. at 101-02, 104.

More recently, in 2005, the Supreme Court of Pennsylvania suspended William E. Papas for two years for the unauthorized practice of law.  Papas, 78 Pa. D. & C.4th at 104.  Papas was transferred to inactive status for failing to comply with his continuing legal education requirements.  Id.  Ten years before he had been suspended in connection with a drug conviction.  Id. at 92.  He continued working on pending cases and accepted new clients after he was transferred to inactive status.  Id. at 94-99.  In imposing the two year suspension, the Pennsylvania Supreme Court rejected the Disciplinary Board's recommendation that he be suspended for one year and one day.  Id. at 101-03.  In 2006, the Supreme Court of Pennsylvania suspended Alex Hugues Pierre for three years for the unauthorized practice of law after he was transferred to inactive status, because he accepted six new clients' matters, provided legal services in sixteen civil and criminal cases, and demonstrated "a clear lack of competence" in his handling of one of these cases, during nineteen months on inactive status.  See Office of Disciplinary Counsel v. Pierre, 897 A.2d 1162 (Pa. 2006); Office of Disciplinary Counsel v. Pierre, No. 134 D.B. 2004, slip op. at 7-11, 19-20 (2006).

## RECOMMENDATION

We find that the grievous nature of the facts and circumstances of the instant matter, as well as the aggravating factors discussed above, far outweigh any mitigating factors asserted by Mr. Marcone. Consequently, the Panel recommends that Mr. Marcone be suspended for a period of four years.

_____
JOHN R. PADOVA                    J.

_____
BRUCE W. KAUFFMAN                 J.

_____
JUAN R. SANCHEZ                   J.

xc  F. Marcone

21